UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA O. LEWIS,<br><br>   Plaintiff,<br><br> v.<br><br>MARTIN O'MALLEY,<br><br>   Defendant. | Case No. 24-cv-02965-PCP<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 15, 17 |

Plaintiff Lisa Lewis seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability insurance benefits under Titles II and XVII of the Social Security Act. The government concedes that the ALJ's decision is not supported by substantial evidence. Dkt. No. 17, at 1. The parties therefore agree that the ALJ erred and that Lewis is entitled to judgment. But the parties disagree about whether the Court should remand for further proceedings or for an award of benefits. Because the record contains factual conflicts and ambiguities that the ALJ must resolve to conclusively establish Lewis's disability status, the Court remands this case for further proceedings.

## BACKGROUND

Lewis's social security application was filed on February 14, 2017. It was denied by ALJ Evangelina Hernandez on April 16, 2019. The Appeals Council denied Lewis's request for review, and Lewis sought review in this court. On March 1, 2022, this court remanded for further proceedings, finding that the record regarding whether Lewis suffered from cognitive disorders was inadequately developed and that the "ALJ's decision simply overlooked" medical evidence suggesting that she did suffer from such disorders. Tr. 1912. The court ordered that the ALJ, on remand, (1) credit as true Lewis's and her then-husband James Washington's statements about

Lewis's "memory and comprehension deficits," *id.* at 1918; (2) contract another consultative examiner to evaluate Lewis's cognitive testing and functioning and otherwise develop the record regarding any cognitive disorders that Lewis suffers, *id.* at 1924; and (3) consider the issues raised in Lewis's briefing that the court did not reach. *Id.* at 1925.

On March 11, 2024, after another hearing, ALJ Hernandez issued another decision denying Lewis's application and finding her not disabled, which became the final order of the Commissioner after Lewis's request for review by the Appeals Council was denied. ALJ Hernandez's decision is therefore the final decision subject to this court's review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

In her opinion, ALJ Hernandez first noted that Lewis alleged disability beginning January 1, 2014, and determined that Lewis satisfied the insured status requirements of sections 216(i) and 223 of the Social Security Act through June 30, 2020. Tr. 1776–77.

ALJ Hernandez then applied the five-step sequential analysis used to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920.[1]

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity during the period from her alleged onset date of January 1, 2014 through her date last insured of June 30, 2020." Tr. 1779.

---

[1] The five steps of the inquiry are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).
5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

1  At step two, the ALJ found that plaintiff had "the following severe impairments: spine disorders, hearing loss not treated with cochlear implantation, depressive, bipolar and related disorders, borderline intellectual functioning, scoliosis deformity of spine, radiculopathy, lumbar region; post laminectomy syndrome, and Graves' disease." Tr. 1779. The finding of severely impairing borderline intellectual functioning was not contained in the ALJ's earlier decision. The ALJ found that Lewis's "history of spinal fusion, status post rotator cuff procedure, seizures, status post foot surgery, migraines, and obesity" was not severe. *Id.*

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 1780. The ALJ considered Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), 2.10 (hearing loss not treated with cochlear implantation), 12.04 (depressive, bipolar and related disorders), and 12.05 (intellectual disorder). At issue are the ALJ's findings under Listing 12.05, which requires in part:

> significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
> a.   Understand, remember, or apply information; or
>
> b.   Interact with others; or
>
> c.   Concentrate, persist, or maintain pace; or
>
> d.   Adapt or manage oneself.

The ALJ found that Lewis had a moderate limitation in (a) understanding, remembering, or applying information; no limitation in (b) interacting with others; a marked limitation in (c) concentrating, persisting, or maintaining pace; and a mild limitation in (d) adapting or managing oneself. Because the ALJ did not find two marked limitations or one extreme limitation, the ALJ held that the requirements of Listing 12.05 were not satisfied. Tr. 1781.[2]

---

[2] The Court notes that Lewis's borderline intellectual functioning should be analyzed under Social Security Listing 12.11 rather than Social Security Listing 12.05. *See* 20 C.F.R. pt. 404, subpt. P,

3

1  "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's
2  [residual functional capacity] RFC." *Bray v. Comm'r of Social Security Admin.*, 554 F.3d 1219,
3  1222–23 (9th Cir. 2009). The ALJ found that plaintiff had "the residual functional capacity to
4  perform light work as defined in 20 CFR 404.1567(b) except never climb ladders, ropes or
5  scaffolds, occasionally do ramps and stairs, frequently balance, all other postural activities are
6  occasional, avoid concentrated exposure to extreme heat, avoid concentrated exposure to
7  vibrations, and overhead reaching with right should is frequent. She should avoid moderate use of
8  hazardous machinery, moderate exposure to unprotected heights, and needs a position that does
9  not require fine hearing. Work limited to simple as defined in the Dictionary of Occupational
10 Titles (DOT) as SVP levels 1 and 2, routine and repetitive tasks, and has to work in a low stress
11 job, as defined as having only occasional decision making required and only occasional changes in
12 the work setting." Tr. 1783. This is the same RFC set forth in ALJ Hernandez's prior opinion that
13 was overturned by this court. *Id.* at 22.

At step four, the ALJ found that Lewis was capable of performing Lewis's past relevant work as a sales attendant. *Id.* at 1789. She also found that Lewis could work as a collator operator, marker, and rental clerk. *Id.* at 1789–90. The ALJ therefore concluded that Lewis was not disabled.

## ANALYSIS

### I.  Standard of Review

On review, the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court can set aside a denial of benefits only if it is not supported by substantial evidence or based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is defined as

---

app. 1, § 12.00B9b ("Examples of disorders that we evaluate in this category include … borderline intellectual functioning."). Because the ALJ nonetheless made a factual finding that would preclude a finding of disability under Listing 12.11—namely, that Lewis did not have either one extreme limitation or two marked limitations in the listed areas of mental functioning—the ALJ may not have erred. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). On remand, however, the ALJ should expressly consider Listing 12.11 because, unlike Listing 12.05, it contains no requirement "that the disorder began prior to [the claimant's] attainment of age 22." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05B1-3.

4

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). To remand for an award of benefits,

> [t]he district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence.… If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and "all essential factual issues have been resolved."

*Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014)). Only if the record has been fully developed and there are no outstanding issues to be resolved will the court consider whether, taking the record as a whole, there is no doubt to the claimant's disability. *Leon*, 880 F.3d at 1045. "Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits." *Dominguez*, 808 F.3d at 407.

**II.   The ALJ erred in failing to comply with the Court's prior order regarding witness testimony.**

In its prior order, this Court ordered ALJ Hernandez to credit as true Lewis's and third-party witness James Washington's testimony about Lewis's memory and deficiencies.[3] In particular, the Court noted the following testimony:

> [The ALJ asked,] "[s]o, we sent you to a doctor that says you would

---

[3] Lewis argues that the district court ordered all of these witnesses' testimony to be credited as true, but the order addressed only the memory and deficiency testimony.

5

> - - you have an issue with your concentration. Do you think that's true?" Plaintiff responded to the following effect: "[y]es, I had seizures back in 2014 and I had lost 90% of my memory and so at times it go[es] away and then it come[s] back and . . . [i]t just varies . . . it comes and goes."
>
> …
>
> In February of 2018, Plaintiff's husband of 25 years submitted a third-party function report. He reported that her illnesses and conditions have combined to affect her ability to handle money due to her memory loss and difficulties with comprehension. These symptoms also require her to be given reminders about places to which she might need to go, as well as the fact that she sometimes needs to be accompanied on these visits. He also related that Plaintiff's memory problems have caused her to experience difficulties in maintaining attention, or following instructions (regardless of whether those instructions are written or verbal). He then added that Plaintiff's ability to handles stress is "[n]ot good because her memory goes in and out" and that "she forgets what she's supposed to do." In her own function report (also from February of 2018), Plaintiff noted that she needs to be reminded to take her medications. She then added that her memory loss has affected her ability to handle money. Lastly, Plaintiff stated that her illnesses and conditions have combined to affect her functional abilities as to her memory, concentration, understanding, and her ability to complete tasks.

Tr. 1912–13 (citations omitted).

It is apparent from the face of ALJ Hernandez's order on remand that she did not abide by the Court's direction to credit this testimony. At step three, for example, the ALJ held:

> In understanding, remembering, or applying information, the claimant had a moderate limitation. During evaluation in September 2017, the claimant reported a high school education and no history of special education. Memory functioning was adequate, and thinking was within normal limits (Exhibit 11F). A WAIS-IV intelligence test noted a full-scale IQ of 73, consistent with borderline intellectual functioning. The claimant reported completing a cosmetology program, and a certification in medical administration and medical billing. Dr. Johnson noted moderate impairment in memory (Exhibit 29F). The claimant manages household finances by paying bills, handling a savings account, and using a checkbook or money orders (Exhibit 20E).

*Id.* at 1780–81. In this evaluation of Lewis's ability to "remember" information, ALJ Hernandez made no mention of Lewis's testimony that she had lost 90% of her memory. ALJ Hernandez

never cited Lewis's 2018 function report containing much of the testimony about her memory deficits that the Court quoted and ordered to be credited as true. The only testimony of Lewis's that ALJ Hernandez cited at all was another function report submitted by Lewis after the previous order on January 3, 2022 (Exhibit 20E), where Lewis simply checked "yes" boxes stating that she was able to "pay bills", "count change", "handle a savings account", and "use checkbook/money order," while checking "no" on the next page that asked "has the disabled person's ability to handle money changed since the illnesses, injuries, or conditions began." Tr. 2262. The ALJ made no attempt to square the answers on this January 2022 function report with the previous testimony that the Court had ordered be credited as true, including the fact that when Lewis filled out the 2018 function report, she said her ability to do those activities had been affected due to the seizures. *Id.* at 331. The ALJ also made no mention of Washington's testimony, which noted the same problems. *Id.* at 322.

Additionally, even though ALJ Hernandez noted that "[t]he undersigned gives great weight to the Third Party Function Report[ ] of James Washington … [as] based on personal observations, and [ ] generally consistent with the claimant's testimony of her limitations," *id.* at 1788, her decision never directly referenced or considered Washington's testimony about Lewis's memory lapses that the ALJ was required to credit as true.

ALJ Hernandez therefore erred in failing to follow this Court's instructions on remand, as the government implicitly concedes. Lewis contends that if this testimony is credited as true as it was so ordered, it compels finding of disability and thus justifies ordering that Lewis be provided with benefits. The Court disagrees. It is unclear on the record whether this testimony, if credited as true, would have caused the ALJ to find Lewis's ability to "understand, remember, or apply information"—meaning "to learn, recall, and use information to perform work activities"—markedly impaired such that she would be entitled to benefits at step three or how it would impact the ALJ's determination of Lewis's functional restrictions at steps four and five.

There are additional inconsistencies in the medical record that only the ALJ is positioned to resolve. For example, medical evidence indicates that Lewis's immediate memory index, which "explores the ability to remember both visually and orally presented information immediately after

7

1  it is presented," is extremely low, in the 0.1% percentile, yet in the same report by Dr. Johnson, it
2  found that Lewis has no impairment in her ability to "understand and remember simple
3  instructions." Tr. 3588, 3592. Other medical evidence indicates that Lewis was "having poor
4  memory [and] [r]ight after the first seizure she forgot the name of her kids and since [then] she
5  [has been] having more pronounced memory problem[s]." *Id.* at 413. But Dr. McCord's opinion
6  found no impairment in her ability to understand and carry out instructions and tasks, both simple
7  and complex. *Id.* at 1289. Because further administrative proceedings to square these conflicts and
8  clarify these ambiguities would be beneficial, the Court cannot grant benefits outright.

Nonetheless, as the court explained in its prior order, "[t]his court will not allow the ALJ to have a second chance to do what should have been done correctly in the first place." *Lisa O. L. v. Kijakazi*, No. 20-CV-02865-RMI, 2022 WL 612803, at *5 (N.D. Cal. Mar. 1, 2022) (citing *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")). On remand, the ALJ is therefore **ORDERED** to consider the entirety of the medical evidence before it alongside the witness testimony about Lewis's memory and comprehension that this court has already ordered be credited as true. If the ALJ does not find that the evidence requires a finding of disability at step three, the ALJ is **ORDERED** to consider whether the witnesses' credited-as-true testimony would require a more robust RFC instruction.

### III. The ALJ erred in discounting McCord's and Johnson's opinions and in accepting Schumacher's opinion.

The ALJ also erred in discounting the examining doctor reports produced by McCord and Johnson. "'To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.' … 'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original)).

Here, the ALJ assigned "limited weight" to Dr. Johnson's opinion but gave no reason

whatsoever for doing so. Tr. 1788. The ALJ's refusal to credit Dr. Johnson's opinion was therefore not supported by substantial evidence. The ALJ is **ORDERED** on remand to reconcile Dr. Johnson's opinion with the other evidence before it and afford Dr. Johnson's opinion proper weight.

With respect to Dr. McCord's opinion, the ALJ noted that the opinion "stated that the claimant had moderate to severe impairment in concentration, pace, and persistence, but no other limitations … [which is] not *fully* consistent with evidence of borderline intellectual functioning, difficulty with serial subtraction exercises, and some impairment in memory." Tr. 1788 (emphasis added). In support of this conclusion, the ALJ cited two other opinions that the order separately assigned "limited weight": (1) Dr. Johnson's opinion, as discussed above, and (2) Dr. Watt's opinion, which was properly discounted as not reflective of Lewis's borderline intellectual functioning. *Id.* at 1788. To the extent that the ALJ described parts of Dr. McCord's opinion that are consistent with the record, such as Lewis's impairment in concentration, pace, and persistence, and nonetheless discounted that evidence on the basis of other opinions that the ALJ separately discounted, the ALJ is **ORDERED** on remand to accord those findings proper weight. *See Dale v. Colvin*, 823 F.3d 941, 945 (9th Cir. 2016) (holding "that an ALJ errs when he discounts an other [sic] source's *entire* testimony because of inconsistency with evidence in the record, when the ALJ has divided the testimony into distinct parts and determined that only one part of the testimony is inconsistent" (emphasis in original)).

Lastly, the ALJ erred in giving "great weight" to the hearing testimony of nonexamining medical expert Dr. Schumacher. Dr. Schumacher's opinion contradicted other medical opinions in the record. For example, it stated that "[t]he medical record is unclear about any psychological or psychiatric symptoms prior to the first consultative examination [in 2017]." Tr. 1805. But examining doctors provided opinions that Lewis was suffering from mental impairments as early as 2014. *See, e.g.*, Tr. 413. For example, in March 2014 Dr. Richmond noted that Lewis's complaints about persistent confusion could be explained by a number of possibilities given that "an EEG [ ] showed generalized slowing indicating a global dysfunction of the central nervous system as in encephalopathy, advanced dementia, [central nervous system] depressing

medications[,] or metabolic abnormalities." *Id.* at 502, 507.

With respect to Dr. Schumacher's contrary testimony, the ALJ failed to acknowledge that "more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ also failed to follow the principle that "[w]here an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another" must be provided. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ must give specific, legitimate reasons based on substantial evidence for rejecting the opinion of a treating or examining physician based in part on the testimony of a nonexamining medical advisor. *See Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831.

By accepting the nonexamining and nontreating Dr. Schumacher's opinion and ignoring the plainly contradictory medical evidence in the record from treating physicians, the ALJ erred. On remand, the ALJ is **ORDERED** to consider the medical evidence as a whole and consider whether and what parts of Dr. Schumacher's opinion are supported by it. To the extent that treating and examining physician opinions contradict Dr. Schumacher's testimony, the ALJ cannot credit Dr. Schumacher's opinion without giving specific, legitimate reasons based on substantial evidence.

**IV.    The ALJ did not adequately develop the record and incorporate Lewis's limitations into the RFC.**

"The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, must set out all the limitations and restrictions of the particular claimant. Thus, an RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (quotation omitted). In the ALJ's 2024 opinion she provided the same RFC finding as the 2019 order, limiting Lewis to simple, routine, repetitive tasks in a low stress job setting. Tr. 1783. Lewis contends that the RFC finding is inadequate in light of the even more serious mental limitations that the ALJ found in the second opinion, including that Lewis has

10

the severe impairment of bordering intellectual functioning. *See id.* at 1779.

  The RFC sets forth "the most a [claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ's opinion noted that Lewis's borderline intellectual functioning and "impaired concentration were considered in [the RFC's] limiting the claimant to simple, routine, and repetitive tasks, in a low stress job with only occasional changes in the work setting." Tr. 1789. Lewis argues that the RFC instruction limiting Lewis "to simple, routine, repetitive tasks in a low stress job setting" does not accurately capture these mental impairments, and that "[a]t minimum, the moderate to severe limitation in maintaining concentration, persistence, and pace … should have been presented to the vocational witness to determine its impact on the ability to perform the identified jobs." Dkt. No. 15-1, at 24.

  "An ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Because the medical testimony here is ambiguous, it is unclear on the record before the Court whether the ALJ's RFC accurately captured Lewis's restrictions related to her marked impairment in concentration, persistence, or pace. Dr. Johnson and Dr. McCord's reports do not directly conflict with or support the limiting instruction that the ALJ selected. McCord's opinions notes that "I am concerned about [Lewis's] capacity to keep pace with coworkers." Tr. 1289. Johnson's opinion finds a "moderate" impairment in Lewis's "[a]bility to sustain concentration, attention, consistency, and persistence in work-related activity at a reasonable pace" and accompanies the finding with a note that "claimant is limited in mental flexibility. She has few available strategies to aid in effectively problem solving." Tr. 3590. Neither Johnson's or McCord's opinion speaks authoritatively on Lewis's ability to sustain concentration and attention sufficient to perform at least simple, repetitive, and routine tasks without a severe restriction of function.

  The record's ambiguity on Lewis's functional restrictions due to her marked limitation on concentration, persistence, or pace is further highlighted by the testimony of nonexamining Dr. Schumacher. When asked whether Lewis's concentration, persistence, or pace impairment would result in a reduced output at work, Dr. Schumacher responded that "there really aren't any direct

11

measures of things like her ability to concentrate or attend or manage pace … I just don't see anything that allows for quantification of that." Tr. 1807.

"The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotations omitted). Ambiguous evidence triggers the ALJ's duty to "conduct an appropriate inquiry." *Id.* at 1150. On remand, the ALJ is **ORDERED** to develop the record regarding any functional work restrictions resulting from Lewis's marked limitation in concentration, persistence, or pace, and to incorporate such findings into the RFC.

The record is equally ambiguous as to what functional restrictions stem from Lewis's moderate limitation in understanding, remembering, or applying information. For example, Johnson's report indicates that "current memory deficits may impede the claimant's performance as well as persistence with more complex tasks" and found Lewis had a "mild" impairment with carrying out even simple instructions. Tr. 3590, 3592. Yet the ALJ's RFC included no specific instruction regarding Lewis's memory limitations. The ALJ is therefore **ORDERED** to develop the record on any functional work restrictions from Lewis's memory impairments and incorporate the findings into the RFC.

The ALJ also erred in not considering whether Lewis's migraines presented a limitation that should have been incorporated into the RFC.[4] "[I]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (citing *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)). The ALJ did not discuss Lewis's migraines except in one conclusory statement in determining it was not a severe impairment, finding "[t]he claimant reported a reduction in

---

[4] Lewis argues that the ALJ erred by not considering her migraines a severe impairment at step two. Because Lewis's claim proceeded beyond step two, however, any such error was harmless. "Step two is merely a threshold determination meant to screen out weak claims. … It is not meant to identify the impairments that should be taken into account when determining the RFC.… The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) (emphasis in original).

12

1  headaches with Topamax, and no seizures since 2014." Tr. 1779. The ALJ apparently ignored the

2  conflicting medical evidence indicating that Lewis was still suffering migraines despite the

3  Topamax. *Id.* at 2571, 2615. The ALJ is therefore **ORDERED** to develop the record regarding

4  whether Lewis suffered any impairments due to her migraines and to incorporate the findings into

5  the RFC.

**V.    The ALJ erred in rejecting the rest of Lewis's testimony without providing specific, clear, and convincing reasons for doing so.**

8  Finally, the ALJ erred in rejecting Lewis's other symptom testimony. Once the claimant

9  presents some objective medical evidence of impairments that might reasonably produce the

10  symptoms or pain alleged (as the ALJ found Lewis had done in this case), the ALJ can "reject the

11  claimant's testimony about the severity of those symptoms only by providing specific, clear, and

12  convincing reasons for doing so" *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015),

13  or by finding evidence of malingering. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040

14  (9th Cir. 2003). Where an ALJ finds "no evidence of malingering," the ALJ is "required to state

15  which symptom testimony he [finds] not credible with enough specificity to allow a reviewing

16  court to confirm that the testimony was rejected on permissible grounds and not arbitrarily." *Id.* at

17  1040–41.

18  The ALJ did not do so in this case. The ALJ noted "[a]s for the claimant's statements

19  about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with

20  the longitudinal medical evidence of record, which does not support the degree of alleged

21  impairment, or a finding of disability." Tr. 1784. The ALJ did not specify what portion of Lewis's

22  symptom testimony she found not credible, but specifically pointed to the record:

> show[ing] some improvement in back pain with conservative treatment. Physical therapy records in March 2017 indicated decreased levels of pain, with no radicular pain into the lower extremities. The claimant was encouraged to walk or use a stationary bike at the gym (Exhibit 7F/336). … Records in January 2022, after the date last insured describe the claimant as "very active," exercising daily, taking cosmetology classes, babysitting, and riding a bike at home (Exhibit 19F/21- 25). Overall, the degree of limitation alleged prior to the date insured, and slightly thereafter, do not support a

13

finding that the claimant is precluded from all work activity.

*Id.* at 1787. Concerningly, in rejecting Lewis's testimony on this basis, the ALJ did not mention or square the myriad conflicting medical evidence in the record suggesting that Lewis continued to suffer from back pain and difficulty standing, which would support Lewis's symptom testimony. *See, e.g.*, *id.* at 2443 (stating that it was Lewis's long-term physical therapy goal was to be able to stand 15 minutes without difficulty); *see also id.* at 1209, 1218–19.

Because the ALJ did not specifically describe the parts of Lewis's symptom testimony that she found not credible, her opinion is not supported by sufficient evidence. The Court expresses concern that the ALJ cited secondhand medical progress notes about Lewis's day-to-day life after the time last insured to discredit Lewis's pain testimony. *See Robert P. v. Kijakazi*, No. 23-CV-03310-RMI, 2024 WL 4224892, at *3 (N.D. Cal. Sept. 17, 2024). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). "'Only if the level of activity [is] inconsistent with Claimant's claimed limitations' do daily 'activities have any bearing on Claimant's credibility.'" *Ferguson v. O'Malley*, 95 F.4th 1194, 1203 (9th Cir. 2024) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (alteration in original)). "We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Id.* (quoting *Garrison*, 759 F.3d at 1016).

To the extent that the ALJ relied on Dr. Rana's opinion after her March 2023 examination of Lewis (Tr. 3032) to discredit Lewis's testimony about her ability to stand and sit for periods of time or her other physical limitations, the Court finds persuasive the analysis of a nearly identical report by Dr. Rana in *Robert P. v. Kijakazi*, No. 23-CV-03310-RMI, 2024 WL 4224892 (N.D. Cal. Sept. 17, 2024). The *Robert P.* court found that:

[W]ithout much explanation, Dr. Rana's report found that Plaintiff

14

> can walk for five hours during an eight-hour day with breaks, and that he can sit for six hours during an eight-hour day with breaks. However, Dr. Rana's report does not specify the length or frequency of these breaks, nor does it specify the basis for her conclusion as to the functional capacity assessment itself. … If Dr. Rana can provide a reasoned explanation for that assessment, then Plaintiff's testimony to the contrary may be given less persuasive weight; however, if Dr. Rana's opinion to that effect cannot be supported with any reasoned explanation, then Plaintiff's testimony to the contrary would be persuasive.

*Id.* at *2–4. For the same reasons, the Court here **ORDERS** the ALJ to develop the record further if she continues to rely on Dr. Rana's report, and to "then compare [Lewis's] claimed limitations with Dr. Rana's (now missing) explanations for her functional assessment (including the frequency and duration of the breaks she considered necessary) in order to reconcile any inconsistencies prior to formulating the RFC." *Id.* To the extent that the ALJ relies on Dr. Bohnert's opinion, which similarly lacks detailed reasoning, the ALJ is **ORDERED** to do the same. Tr. 97.

## VI. Lewis's case should be assigned to a new ALJ on remand.

Given how poorly the record has been developed during the seven years that Lewis's application for benefits has been pending, and because numerous conflicts are apparent on the face of the record, the Court cannot conclude that further administrative proceedings would serve no useful purpose or that a review of the record gives rise to no serious doubt that Lewis is in fact disabled. *See Garrison v. Colvin*, 759 F.3d 995, 1022–23 (9th Cir. 2014).

"To whom a case should be remanded is generally within the province of the Secretary's responsibility." *Travis v. Sullivan*, 985 F.2d 919, 924 (7th Cir. 1993). But under certain circumstances, a district court can either order or recommend that the case be reassigned to a new ALJ on remand. *See e.g.*, *Sarchet v. Chater*, 78 F.3d 305 (9th Cir. 1996) (noting that "[t]he tone of the [ALJ's] opinion suggests that she may have an unshakable commitment to the denial of this applicant's claim" and recommending that the case be transferred to a different ALJ on remand). "[I]t is well established that district courts have the authority to order, rather than merely recommend, that a different ALJ preside on remand." *Risco v. Saul*, No. 18-CV-07193-RMI, 2020 WL 2733958, at *6 (N.D. Cal. May 26, 2020) (collecting cases).

15

> Factors to be considered before ordering reassignment include: (1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party.

*Id.* at *7. Lewis does not argue, and the record does not suggest, that the ALJ has demonstrated bias in these proceedings, which is often dispositive in ordering reassignment. *Id.* But the Court is nonetheless concerned that the ALJ did not follow the clear command of this Court on remand and that Lewis's claim has been pending for a lengthy time due to multiple rounds of inadequate proceedings. The Court therefore strongly recommends that the Commissioner assign the case to a different ALJ on remand. *See, e.g.*, *Ramos v. Astrue*, 674 F. Supp. 2d 1076, 1094-95 (E.D. Wis. 2009) (recommending reassignment where the ALJ "twice failed to produce an acceptable decision"); *Ortiz v. Chater*, 1997 U.S. Dist. LEXIS 21675, No. 95-CV-3126, 1997 WL 50217, at *3 n.1 (E.D.N.Y. Jan. 30, 1997) (finding that, rather than having the same ALJ review case for third time, a "fresh look by another ALJ would be beneficial"); *Flentroy-Tennant v. Astrue*, Case No. 3:07-cv-101-J-TEM, 2008 U.S. Dist. LEXIS 24342, 2008 WL 876961 (M.D. Fla. March 23, 2008) (recommending reassignment on the second remand where the court did not find that "the ALJ has built the requisite accurate and logical bridge from the evidence to the conclusion").

## CONCLUSION

For the foregoing reasons, the case is **REMANDED** to the Commissioner for further proceedings consistent with the instructions provided herein.

**IT IS SO ORDERED.**

Dated: December 19, 2024

P. Casey Pitts
United States District Judge